### Petition of GULF TELEPHONE CO.

Docket No. 72376-TP. Order No. 5604.

Florida Public Service Commission.

December 27, 1972.

Pusuant to notice, the commission held a public hearing in this docket in Perry, Florida, in August of 1972. All interested parties indicating a desire to be heard were given a full opportunity to and did present their testimony.

Chairman WILLIAM H. BEVIS and Commissioner WILLIAM T. MAYO participated in the disposition of this matter.

## BY THE COMMISSION.

*Order authorizing increases:* Gulf Telephone Company (sometimes referred to herein as "Gulf Telephone," the "Company," the "utility," or the "petitioner"), an operating telephone company subject to the jurisdiction of this commission by virtue of the provisions of Chapter 364, Florida Statutes, filed in this docket on June 30, 1972, its petition for authority to increase its rates and charges so as to give said utility an opportunity to earn a fair return on the value of its property used and useful in serving the public. With few exceptions, the company has supported its petition in conformity with the rate-making principles laid down by this commission in the so-called "Big Six" rate cases, involving the six largest electric and telephone utilities operating within the state of Florida, which have been approved by the Supreme Court. In addition to the supporting testimony and exhibits submitted by Gulf Telephone on its own initiative, we have required the company to provide extensive data and operating statistics disclosing every facet of its operation, financial status, and earnings situation. In addition, all annual and other reports filed with the commission by petitioner were made a part of the record in this proceeding, and the information contained in such reports is available for consideration in the disposition of this matter. The Governor of Florida, through his consumer advisor, intervened in this proceeding for the purpose of maintaining his position with respect to the treatment to be accorded the state's corporate income tax for rate making but did not consider it necessary to appear and participate in the hearing. One public witness apeared and was assisted in presenting his individual testimony by consumer's counsel appointed by the commission for that purpose. All data and evidence available to the commission have been thoroughly analyzed and evaluated by our staff, along with the underlying records of the company. Our decision in this matter is based on the entire record which has been compiled before us.

### I. *Nature of proceeding*

In this proceeding, the petitioner seeks authority to increase its intrastate telephone rates and charges so as to give the company an opportunity to earn a fair return and thereby maintain its financial ability to provide adequate and reliable telephone service within its service area.

The company has not had an increase in its rates and charges since 1961 and takes the position that, in the face of ever-increasing demands for telephone service, coupled with continuing high oper-

ating, capital and construction costs, its presently effective rates and charges for telephone service do not, and will not, provide either a fair return or adequate compensation for the service rendered. Gulf Telephone makes a strong showing that its earnings have deteriorated, and its ability to obtain necessary additional capital to enable it to continue to adequately and fairly meet its service obligations is in serious jeopardy unless rate relief is granted. For that reason, the company insists that it has no alternative but to seek substantial and adequate relief through an increase in its rates and charges. The increases proposed by Gulf Telephone would produce approximately $199,000 in additional gross revenue, on an annual basis, which would permit the company to earn a return of 5.98% which it contends would be fair and reasonable when applied to a year-end net investment rate base and make additional financing possible.

## II. *The petitioner and its growth*

Gulf Telephone is a corporation organized under the laws of Florida and authorized to engage in the business of providing communication service by telephone. The company holds Certificate of Public Convenience and Necessity No. 21 issued by this commission on September 8, 1955. Gulf Telephone is not affiliated with any holding company, but is a completely independent telephone utility serving the public within its certificated territory which includes the city of Perry, all of Taylor County, and a small portion of Madison County. The company was organized in 1911; and by the end of 1960, the 49th year of its operation, its total telephone plant in service approximated $326,000. By the end of 1966, the company's telephone plant in service had increased to $1,938,000. In the past five years, that is by the end of 1971, plant in service had almost doubled and was approximately $3,838,000. During the test year, the calendar year 1971, the company increased its plant in service by the amount of $1,236,000, or about 32%. The company anticipates a continuation of its extraordinary growth and has a Rural Telephone Bank loan committed in the amount of $808,500 for immediate future construction.

## III. *The company's financing problem*

The company was advised on May 8, 1972, that a "C" loan from the Rural Telephone Bank had been authorized in the amount of $808,500. Gulf Telephone has been financed primarily by 2.0% REA funds in the past. However, such 2.0% money is no longer available to the Company because it can no longer meet the telephone density test of REA. The company still has only 5.3 telephones per square mile, which is extremely low but too high for it to qualify for the low 2.0% REA money. The company presently

has outstanding 2.0% REA loans in the amount of $2,683,870 on which the annual interest requirement is $54,677. The Rural Telephone Bank "C" loan is at the interest rate of 7.5% with annual interest requirement of $60,637, which will more than double the company's present interest requirement. The company makes the strong point that its ability to continue to meet the minimum service standards of this commission, and provide the public with adequate and reliable telephone service, depends upon its ability to secure adequate financing.

## IV. *The rate base*

The company has prepared a year-end net investment rate base in the amount of $3,185,993, which was constructed basically in conformance with the principles usually followed by this commission. We accept the rate base as proposed by the company and find that the use of the year-end approach is justified by the extraordinary rate of growth in plant, as was enumerated above, and, particularly, by the substantial amount of telephone plant added during the test year between August and December; all of which was in service at the end of the test year. We are also recognizing the effect on revenues of this additional plant by applying the unit factor to adjust net operating income upward. We find, therefore, that the proposed rate base in the amount of $3,185,993 is the reasonable value of the company's property on which it is entitled to earn a fair rturn.

## V. *Net operating income and earned rate of return*

The company's net operating income for the test period, including their adjustments to reflect the end-of-year plant, was $94,444 as shown by Exhibit No. 6 (later adjusted by the company to $95,509). The company had increased local service revenues by $28,506.97 and depreciation expense by $37,390.52 to reflect the year-end plant with a net reduction to Net Operating Revenue (NOI) of $4,620. We think that the use of the Unit System is a more appropriate method for adjusting revenue for this purpose in this docket. Accordingly, we have added back the $4,620 to the operating income. We have also increased operating income by $1,536, because we are not considering the revenue requirement effect, if any, of the Florida Corporate Income Tax for the reason that the proper treatment of that tax is now under consideration and pending in Order No. 10443, Docket No. 72707-Rule. These two amounts increase the company's NOI of $95,509 to $101,665 and, multiplying by the unit factor of 1.02, we get adjusted operating income of $103,698. As related to the year-end rate base of $3,185,993, this gives an earned rate of return of 3.25% after the

above adjustments. The inadequacy of that return is recognized when consideration is given to its imbedded cost of long-term debt of 2.15% at December 31, 1971, becoming 3.27% when the cost of capital is increased as a result of the new REA "C" loan which carries an interest rate of 7.5%.

VI. *Allowable rate of return*

The company takes the position that a return of 5.98% when applied to a year-end net investment rate base would be fair and reasonable. In computing their requested rate of return of 5.98%, the company used a return on equity of 19.95% as being fair and reasonable when consideration is given to its capital structure and the problems facing such small utilities in the money market. It is true that the company does have a low equity ratio with a corresponding high debt ratio. The company's capital structure as of December 31, 1971, consisted of longterm debt of 76.33%, cost-free capital 3.82%, and equity of 19.85%. The company takes the position that a 19.95% return on equity is compatible with prior decisions of this commission when adjustments are made for the low equity ratio. While we agree that recognition should be given to equity ratio in arriving at a fair rate of return, we have determined that the return on equity should lie in the range of 12.6-17.6%. In making this determination, major emphasis was placed upon a revenue requirement sufficient to allow the company to recover its operating costs of providing telephone service, provide funds for maintenance of its debt obligations, and, under efficient and economical management, preserve the financial integrity of the entity but, at the same time, insure that the rates to the consumer would be fair and reasonable. While we do not advocate the use of residual earnings as a means of establishing the return on equity, we do recognize that company must receive adequate revenue for debt coverage.

Using a range for return on equity of 12.6-17.6%, the company's cost of capital would be as follows —

|  | Ratio | Cost(a) | Effective Cost |
|---|---|---|---|
| Debt | 76.33% | 3.27% | 2.50% |
| Cost Free | 3.82 | —0— | —0— |
| Equity | 19.85 | 12.6-17.6 | 2.50-3.50 |
|  | 100.00% |  | 5.0-6.0% |

Note: (a) The cost of debt has been adjusted for the 7.5% Rural Telephone Bank "C" loan.

The midpoint of this range would be a 15.11% return on equity with a resulting total cost of capital of 5.50%. On the basis of reasonable precedent established by this commission, following principles recognized and approved by our Supreme Court, and recognizing the difficulties experienced by small public utilities in financing their growth and improvement programs, we find that the return of 15.11% on common equity capital for Gulf Telephone Company, in the light of its capital structure, is fair and reasonable and should be approved. Further, we find that the company should be allowed a return of 5.50%, which is equivalent to its total cost of capital and represents the minimum return required to maintain the company's financial integrity and not impair its credit.

Applying the 5.50% rate of return to the $3,185,993 rate base which we have previously found to be the reasonable value of the company's property on which it is entitled to earn a fair return, we find that the company is entitled to a net operating income of $175,230. Since the adjusted net operating income for the test year was $103,698, the NOI deficiency is $71,532. Applying an expansion factor of .51155 to the $71,532 results in additional gross revenues of $139,834 which the company is entitled to receive.

### VII. *Compliance with minimum service standards*

As required by the statutes of this state, we have considered the adequacy of the company's service and its performance record under our Minimum Standard Service Rules. It is not often that we are able to find that a telephone utility has fully met the requirement of our service rules. Complete compliance is, of course, difficult to achieve in periods and areas of extraordinary growth. However, the records in our files and in this docket demonstrate reasonably satisfactory compliance by Gulf Telephone. The service problems of the company at the present time must be considered to be minimal and adequately provided for in its current construction and improvement program to be financed by the new "C" loan, already committed by the Rural Telephone Bank. We find, therefore, that the service being rendered by Gulf Telephone is reasonably adequate and constitutes no basis for denying the requested relief.

### VIII. *Compliance with Price Commission criteria*

Gulf Telephone has filed in this docket an exhibit showing that the requested increase in its rates and charges will be in compliance with the general criteria of the Price Commission, which also have been adopted by this commission, even though said company's prices are exempt from economic control under the small business exemption adopted by the Price Commission under authority of the

Economic Stabilization Act of 1970, as amended, since it has less than 60 employees. This exemption is based on the insignificant potential the prices of such small companies have on national inflation.

## IX. *Tariff changes*

The company has proposed that it be allowed to drop the offering of two-party service both inside and outside the base-rate area leaving only one-party service inside the base-rate area and one and four-party service outside the base-rate area. We believe that two-party service is needed and should be retained.

The company has also asked that it be allowed to convert to a zone arrangement in its application of extra exchange line mileage charges rather than continue with its present method of computing on a quarter-mile basis; to eliminate its present additional charges for colored equipment; and to expand the base-rate area of the Perry exchange to coincide with the present boundaries of the Perry city limits.

We find that the company should continue to provide one and two-party service within the base-rate area and one, two, and four-party service outside the base-rate area with appropriate zone charges applying outside the base-rate area. We also find that the company should compute extra exchange mileage charges on a zone basis; offer colored equipment without any additional charges for color; and expand its base-rate area for the Perry exchange to coincide with the city limits boundaries for the city of Perry.

## X. *State corporate income tax*

This commission has by Order No. 10443, in Docket No. 72707-Rule, instituted a rule making procedure relating to the proper treatment of liability for the Florida Corporate Income Tax in all rate proceedings. That proceeding is now pending and will affect the application herein to the extent that the proposed rules will indicate the appropriate treatment of the tax for ratemaking purposes. Accordingly, the increase herein granted does not take into consideration the revenue requirement effect of the Florida Corporate Income Tax for the reason that the proper treatment of that tax is now under consideration and pending in Docket No. 72707-Rule. In the event it is ultimately determined in that docket that all or a portion of the income tax should be allowed as a normal operating expense, the applicant herein shall be privileged to file appropriate tariff revisions reflecting the additional revenue requirements as determined in accordance with the procedures established in that docket.

Accordingly, in this proceeding, we are not considering $11,000 which was the company's liability for Florida Corporate Income Tax during the test period. This reduces the annual additional gross revenues which we are authorizing herein to $139,834 as discussed in a preceding portion of this order.

Now, therefore, in consideration thereof, it is order that the findings herein be and the same are hereby approved and adopted in every respect.

It is further ordered that Gulf Telephone Company be and it is hereby authorized to increase its rates and charges as requested and proposed in this proceeding by the amount of $139,834 on an annual basis.

It is further ordered that Gulf Telephone Company file with this commission for approval appropriate tariff revisions, consistent with the findings and terms of this order, to become effective on a subsequent date as ordered by this commission.

By order of Chairman WILLIAM H. BEVIS, Commissioner WILLIAM T. MAYO, and Commissioner JESS YARBOROUGH, as and constituting the Florida Public Service Commission, this 27th day of December, 1972.

*William B. DeMilly*
Administrative Secretary